J-S14012-26                    2026 PA Super 149

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
:
RICHARD JEROME DUCKETT :
:
Appellant : No. 1043 MDA 2025

Appeal from the Judgment of Sentence Entered July 2, 2025
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004130-2022

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

OPINION BY KUNSELMAN, J.:                     **FILED: JULY 15, 2026**

Following a non-jury trial, Richard Jerome Duckett appeals from the judgment of sentence imposing an aggregate sentence of four-and-a-half to nine years' incarceration for possession of a firearm prohibited, carrying a firearm without a license, and related offenses.[1]  Duckett filed a motion to suppress the evidence; however, his then-counsel conceded the suppression motion was untimely.  In light of that concession, we dismiss his appellate issue concerning his motion's untimeliness as waived and affirm.

On July 20, 2022, due to his prior convictions, Duckett could not possess a firearm, and he had no license to carry such a weapon.  Nevertheless, he drove through York County with a Glock 19 in his car.  As he did so, Duckett failed to use a turn signal to merge onto the interstate highway.  He also had illegally tinted windows.

---

[1] **See** 18 Pa.C.S.A. §§ 6105(a)(1) and 6106(a)(1), 35 P.S. § 780-113(a)(32), and 75 Pa.C.S.A. §§ 3334(a) and 4524(e)(1).

A Pennsylvania State Trooper observed Duckett's two violations of the Vehicle Code and conducted a traffic stop. It lasted about 15 minutes. During the stop, Duckett confessed to having drug paraphernalia and a firearm in his car. The trooper arrested Duckett, impounded the car, and obtained a search warrant. The ensuing search revealed the Glock 19 and other contraband.

Following a preliminary hearing in the magisterial district court, the trial court scheduled Duckett's formal arraignment for October 3, 2022. Duckett waived the arraignment. Thereafter, the Commonwealth began producing evidence to Duckett's attorney at the office of the public defender. By October 21, 2022, defense counsel had most of the evidence, including a dashboard video of the traffic stop and Duckett's confession to carrying a firearm in his vehicle.

During discovery, Duckett ceased communications with his lawyer. On May 22, 2023, the trial court ordered Duckett to appear for a June 1, 2023 call of the list. He failed to appear for the call, and the trial court issued a bench warrant for his arrest.

The next day, the Commonwealth completed its discovery by providing defense counsel another video depicting the traffic stop, as well as the search of Duckett's car. It also produced a letter concerning Duckett's license-to-carry status. Despite having all of the evidence at his disposal, defense counsel did not file a motion to suppress.

Nearly three months later, police apprehended Duckett. On October 23, 2023, the trial court vacated its bench warrant.

Five more weeks passed. Then, on November 28, 2023, defense counsel filed Duckett's motion to suppress the evidence. He requested the court "invalidate the search warrant . . . and suppress any evidence concerning the possession of a firearm . . . ." Duckett's Motion to Suppress at 7. Duckett contended the trooper unnecessarily prolonged the traffic stop. *See id.* at 2. He further claimed that his confessions were the result of an "unlawful, custodial interrogation" without *Miranda*[2] warnings, the trooper lacked probable cause to seize his car, and he falsified the affidavit for the search warrant. *Id.* at 3.

The Commonwealth filed a response opposing suppression. It claimed that Duckett's motion was facially untimely, thereby "waiving the issue of suppression." Commonwealth's Response at 3. The Commonwealth observed that, under Pennsylvania Rule of Criminal Procedure 579(A), Duckett needed to file his motion within 30 days of his arraignment. Still, the Commonwealth acknowledged that the motion required evidence that it produced in discovery. *See id.* at 4-5. Because discovery ended on June 2, 2023, the Commonwealth argued the suppression court could only delay application of Rule 579(A) for 30 days after discovery ended. Thus, Duckett needed to file his motion by July 2, 2023. *See id.* at 6.[3]

_____

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] The Commonwealth's Response to the Motion Suppress then argued that, if the suppression court did not deem the motion to be untimely, then Duckett was not entitled to relief on the merits of his claims. *See* Commonwealth's Response at 6-17.

Two months later, the parties appeared before the suppression court. The Commonwealth requested immediate denial of Duckett's motion on the basis that the motion was untimely and all issues were waived.

Instead of arguing against the Commonwealth's contention of waiver, Duckett conceded that his motion to suppress was untimely. Defense counsel indicated that he was initially waiting for additional discovery. *See* N.T., 2/8/24, at 3. He also noted that Duckett did not appear for the call of the list on June 1, 2023, and, in his view, "everything obviously kind of falls down at that point until he was apprehended. Upon his apprehension, then [the motion to suppress] was filed." *Id.* at 3-4.

The suppression court said, "Well, I think the case law has been pretty clear, that . . . if he chooses not to appear, he's waiving his ability to move forward and address those issues. Why should we even move to the merits given the untimeliness of the motion?" *Id.* at 4.

Defense counsel replied, "I don't agree that he's waived his right . . . Rule 600 certainly goes against [Duckett], but he still preserves all his rights." *Id.* Counsel then indicated the Commonwealth did not promptly comply with its discovery obligations. The court asked defense counsel when discovery closed. He did not answer. *See id.*

The suppression court repeated its question. "[Defense counsel], I'm going to cut you off there. My question to you was, when is the last time that you received discovery, because I'm willing to give you 30 days from the last time that you received discovery." *Id.* at 5. Defense counsel did not know

the answer to that question. The Commonwealth indicated that the last of its evidence went to defense counsel on June 2, 2023. ***See id.*** at 5-6.

Defense counsel responded, "And then, of course, [Duckett] was absent. I'm not sure when that was. Let me see, a bench warrant was issued -- oh, it was withdrawn . . . He was apprehended October 23rd, a bench warrant -- there was a bench-warrant hearing at that time." ***Id.*** at 6.

The court said, "Well, [your] suppression motion was more than a month after that, as well. So, you received discovery in June, he showed up in October, and this [motion to suppress] wasn't filed until November 27th." ***Id.***

At that point, defense counsel conceded the issue of untimeliness by saying, "Okay." ***Id.*** He admitted that:

> I will be [deemed] ineffective, and I guarantee you this case will come back.
>
> There is nothing --
>
> I wish that things could be done in a way that everybody meets the timelines. The Commonwealth doesn't meet theirs. There were reasons why it may have been filed late, one, because [Duckett] was on the run, and I explained that. I wasn't able to communicate with him. I went over the case, after he [returned,] and I [found] out that he's now been reapprehended, then I open[ed] the file and review[ed] it again . . . This kind of was just dormant.

***Id.*** at 6-7.

The suppression court expressed its disagreement that defense counsel would be deemed ineffective in his handling of the motion to suppress. In the court's mind, it did not "know how [defense counsel] can be ineffective if

- 5 -

[Duckett] was gone for four months." ***Id.*** at 7. The court then repeated that it was willing to extend application of Rule 579 for 30 days after defense counsel received all the discovery.

He answered:

> All right. Well, 30 days after I got discovery. So, if that's the standard then, Judge, then I'm ineffective. This is a valid issue. [The] Superior Court will deal with it, and it will come back. I'll make sure that I fall on my sword on this one, because this is not something that [the motion] should be rejected on. It should be heard on the merits.
>
> Yes, if we want to sit down and address this issue, then I'll lay out the entire timeline. Unfortunately, I was expecting to have a hearing on the merits. If we are not going to have the hearing on the merits, I would like to [do a] hear[ing] on that, so the record is clear[. A]nd I can present everything to the court that I did or didn't do, and the Superior Court can decide whether it's ineffective, in which case we'll bring it right back.

***Id.*** at 7-8.

Upon hearing defense counsel's claim of ineffectiveness, the suppression court decided to conduct an evidentiary hearing on the merits of Duckett's motion to suppress and reserved the issue of timeliness until afterwards. The trooper testified to the above facts on behalf of the Commonwealth. Duckett presented no evidence and called no witnesses.

Defense counsel then made his merits-based argument to the suppression court. ***See id.*** at 63-68. He made no additional counterarguments against the Commonwealth's claim that Duckett's motion to suppress was untimely.

The suppression court then opined from the bench as follows:

> there is a basis to dismiss based upon the fact that [the motion to suppress] was untimely.
>
> We do not feel that [defense] counsel was ineffective. Apparently, the client was not in touch with his attorney. He had a bench warrant and was not in touch with the court. He essentially absented himself from the case during a critical period, where the omnibus [pre-trial motion] should have been filed. That is not [Defense counsel's] fault, that is the defendant's fault.

*Id.* at 69-70.

Thus, the suppression court dismissed the motion as untimely.[4] Based on that ruling, defense counsel withdrew his representation on the grounds that he had provided Duckett with ineffective assistance of counsel. The trial court appointed conflict counsel to represent Duckett.

The matter proceeded to a trial. The trial court convicted and sentenced Duckett as described above. This timely appeal followed.

Duckett raises two appellate issues:

1. Did the [suppression] court abuse its discretion when it denied [Duckett's] motion to suppress on timeliness grounds?

2. Did the [suppression] court err in denying [Duckett's] suppression motion, thereby violating his rights under the Fourth Amendment to the [Constitution of the United States] and Article I, § 8 of the [Constitution of the Commonwealth of Pennsylvania]?

---

[4] We note that the suppression court also elected to address the merits of the motion to suppress, even though it deemed the motion to be untimely and the issues in the motion to be waived. The suppression court concluded the motion to suppress was meritless, as well as untimely/waived.

Duckett's Brief at 4.

Duckett's first claim of error is that the suppression court abused its discretion by dismissing his motion as untimely. He argues that the court's decision was manifestly unreasonable, because it failed to analyze the in-the-interest-of-justice factors that case law establishes for excusing untimeliness of a suppression motion. He also claims the suppression court demonstrated bias against him for absconding from the jurisdiction and used that as an excuse to dismiss the motion as untimely.

As mentioned, at the suppression hearing, Duckett conceded that his motion was untimely. More importantly, he raised no arguments to defend against the Commonwealth's contention that his constitutional claims should be dismissed as waived on that basis. He did not contend to the suppression court that the motion should be heard and decided in the interest of justice. Furthermore, Duckett did not contend that the trial court could not consider his decision to flee the jurisdiction as the cause of his untimely filing, nor did he assert bias or prejudice on the part of the suppression court.

"The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." ***Trigg v. Children's Hospital of Pittsburgh of UPMC***, 229 A.3d 260, 269 (Pa. 2020).

As a general matter, issues and arguments "not raised in lower courts are waived for purposes of appellate review, and they cannot be raised for the first time on appeal." ***Id.*** (citing Pa.R.A.P. 302(a)). As the Supreme Court of Pennsylvania has repeatedly reminded parties and the bar, "issue preservation

is foundational to proper appellate review." *In re F.C. III*, 2 A.3d 1201, 1211 (Pa. 2010).

"Requiring issues to be properly raised first in the trial court ensures that trial judges have the opportunity to consider a potential appellate issue and correct any error at the first available opportunity." *Trigg*, 229 A.3d at 1212. "It also promotes the orderly and efficient use of judicial resources, ensures fundamental fairness to the parties, and accounts for the expense attendant to appellate litigation." *Id.*

Here, Duckett made no argument in the suppression court to assert that it should address his motion to suppress on the merits and not dismiss his motion as untimely. His then-counsel decided to "fall on [his] sword on this one," and admit that the motion was untimely and he provided ineffective assistance of counsel. N.T., 2/8/24, at 8.

Having admitted that his motion was untimely and having raised no grounds to excuse his untimeliness below, Duckett may not assert that the suppression court's acceptance of his admission was unreasonable, because that court failed to apply a test he never asked it to apply in the first place. *See* Pa.R.A.P. 302(a). The issue of whether the trial court lacked a reasonable basis for refusing to accept the untimely motion "in the interest of justice" is dismissed as waived.

Similarly, Duckett may not argue, for the first time on appeal, that the suppression court's decision, which accepted his concession of untimeliness at face value, was the product of bias, prejudice, or ill-will. The suppression

court's decision was the product of Duckett's admission, in open court, that he violated the Pennsylvania Rules of Criminal Procedure by filing his motion to suppress more than 30 days after discovery had closed.

Duckett's first appellate issue dismissed as waived.

In his second issue, Duckett seeks to challenge the suppression court's determination that his motion to suppress the evidence was meritless.

Because we have dismissed the issue of untimeliness as waived, we cannot provide appellate relief on his second claim of error. Even if we were to agree with Duckett that he should have prevailed on the merits of his motion to suppress, the suppression court's decision to dismiss the motion as untimely would remain undisturbed. Accordingly, the doctrine of mootness disposes of Duckett's second appellate issue.

In general, the courts of this Commonwealth are "not [to] decide moot questions." *Pap's A.M. v. Erie*, 812 A.2d 591, 599 (Pa. 2002). Of particular relevance to Duckett's second issue, our courts are "even more reluctant to decide moot questions which raise constitutional issues." *In re Gross*, 382 A.2d 116, 120 (Pa. 1978). Such "judicial reluctance is 'the exercise of judicial restraint from unnecessary decision of constitutional issues.'" *Id.* (quoting *Kremens v. Bartley*, 431 U.S. 119, 136, (1977)).

A "legal question can become moot on appeal as a result of an intervening change in the facts of the case." *Id.* at 119. Mootness "problems arise from events occurring after the [case] has gotten under way . . . which allegedly deprive the litigant of the necessary stake in the outcome." *Id.*

(quoting G. Gunther, CONSTITUTIONAL LAW at 1578 (9th ed. 1975)). The mootness doctrine requires that "an actual controversy must be extant at all stages of review," and that the appellate court can actually grant relief to the party claiming a constitutional violation. *Id.*

We abstain from "render[ing] purely advisory opinions. In other words, judgments or decrees to which no effect can be given will not, in most cases, be entered by this Court." *Rivera v. Pennsylvania Dep't of Corr.*, 837 A.2d 525, 527–28 (Pa. Super. 2003).

For purposes of *this direct appeal*, Duckett no longer has a stake in the outcome of the constitutional question of whether the suppression court correctly concluded that the trooper did not violate his Fourth Amendment and Article I, § 8 rights. This is so, because, even if the trooper violated those constitutional provisions, we could not afford Duckett appellate relief. We would still affirm the suppression court's order denying suppression, on the independent ground that his motion to suppress was untimely.

Hence, it is not necessary for us to decide Duckett's constitutional claims to resolve his *direct appeal*. As Chief Justice Roberts prudently said, "if it is not necessary to decide more, it is necessary *not* to decide more." *PDK Labs. Inc. v. U.S. D.E.A.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J. concurring) (emphasis added). We need not and, therefore, will not decide Duckett's moot second issue.

In fact, the suppression court, upon finding that the motion to suppress was untimely, could have refrained from addressing the merits of Duckett's

- 11 -

suppression motion. Duckett's untimely filing waived his search and seizure issues regarding the evidence. **See** Pa.R.Crim.P. 579(B).

Judicial restraint was particularly important here, because Duckett may eventually wish to file an ineffectiveness claim against Defense counsel under the Post-Conviction Relief Act.[5] In that future proceeding, the underlying merits of waived claims would be for the PCRA court to resolve in the first instance as part of its ineffectiveness analysis.

The question of defense counsel's ineffectiveness was **not** before the suppression court, even though counsel tried to make it so. Nor were the constitutional issues in Duckett's motion to suppress before the suppression court, once that court ruled those issues were untimely and waived under Pa.R.Crim.P. 579.[6] Thus, the suppression court potentially invaded the province of a future PCRA court on two counts: (1) by deciding that defense counsel was effective and (2) by deciding that Duckett's waived motion to suppress was meritless. By deciding the issues of ineffectiveness and Duckett's waived constitutional claims in this criminal proceeding, the suppression court gave advisory opinions that may negatively impact a yet-to-be-filed PCRA proceeding, or even a federal *habeas corpus* case.

---

[5] **See** 42 Pa.C.S.A. §§ 9541-9546.

[6] We note that the suppression court arguably should not have even conducted its evidentiary hearing on the merits of the motion to suppress after defense counsel conceded it was untimely. We encourage the courts of common pleas to exercise judicial restraint and not address moot issues, especially those of constitutional dimensions, unless an exception to mootness applies. **See In re Gross**, 382 A.2d 116, 120 (Pa. 1978).

- 12 -

We refuse to repeat that procedural error. Instead, pursuant to the mootness doctrine, we dismiss the constitutional issues presented in Duckett's second claim of error, because that claim of error cannot serve as a basis for appellate relief. *See Gross*, *supra*; *see also Rivera*, *supra*.

Duckett's second and final appellate issue dismissed as moot.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/15/2026